BOWES, Judge.
Tom Victory, a defendant in the present action, has appealed a jury verdict finding him 25% (comparatively) negligent in the automobile accident which is the subject of this suit. We amend the jury verdict and the judgment on appeal, for the reasons assigned below, so as to find no negligence on the part of appellant.
Defendant Tom Victory was a full-time deputy sheriff in the St. John the Baptist Parish Sheriff’s office in August, 1983. On August 19, 1983, at approximately 6:15 a.m., while on duty, Deputy Victory was on Windsor Boulevard, at the intersection of Airline Highway. This intersection is controlled by a semaphore traffic light. Deputy Victory had proceeded across the westbound lane of Airline, and was on his way to crossing the neutral ground, when he noticed a red pickup truck being driven east on Airline drive through this same red light right in front of him. Victory crossed into the eastern lane of travel on Airline and initiated pursuit of the truck. Within a matter of seconds, the truck stuck the rear end of a vehicle, owned and operated by Mr. Julien Briones, in which the plaintiff Vicknair was a passenger, which was *46 stopped at a second red light a little over a block away.
Victory, already at the scene, called for an ambulance, an emergency vehicle, the Fire Department, and an additional police unit. Mr. Vicknair was seriously injured; Mr. Briones less so. All parties, including Philip Malbrough, the owner and driver of the pickup truck, were taken to the River Parishes Medical Center where they were treated.
Following his release from the hospital, Mr. Malbrough was arrested for driving while intoxicated; however, no blood alcohol test was performed, and Malbrough later pleaded guilty to reckless operation of a motor vehicle. His testimony, however, demonstrated that he remembered nothing about the accident.
Mr. Vicknair was treated over a period of several months for back injuries, including a fractured vertabrae. He filed suit on September 19, 1983, against Malbrough, Briones and his insurer, Fireman’s Fund, State Farm Insurance Company as his (Vicknair’s) underinsured motorist carrier, Deputy Victory, and Baton Rouge Equipment Rentals, the former owner of the truck. Prior to trial, plaintiff settled with all parties except Malbrough and Victory.
Plaintiff alleged that Deputy Victory had negligently chased Malbrough’s vehicle on a heavily traveled highway with little regard for the safety of others, with lights flashing and sirens blaring, resulting in a high-speed auto chase on a heavily traveled U.S. Highway, which caused Philip Malb-rough to lose control of his vehicle, resulting in injuries to your petitioner.
After trial on the merits, the jury returned a verdict finding Malbrough 75% responsible and Victory 25% responsible for the accident, and assessing damages in the amount of $130,000.00. The trial court adopted the verdict in the final judgment before us.
Victory has appealed, alleging five errors. Because we find there was no reasonable factual basis to support the jury verdict, which is appellant’s first assignment of error, we find it unnecessary to address the remaining four issues. Malb-rough has not appealed.
Victory testified that traffic that morning was very light as he proceeded through the intersection. When the pickup truck passed through the red light, the deputy entered into the eastbound travel lane of Airline Highway, about two hundred feet behind the truck. After traveling about two hundred feet, he reached down to the control panel to switch on the overhead flashing lights but witnessed the accident at the next traffic light before he could do so. There was only a distance of approximately 450 feet between the traffic signals. He denied driving recklessly, at a high speed, or being involved in a high-speed chase with Malbrough. We find his testimony on these points plausible and persuasive:
Q. Why didn’t you turn on your red lights as soon as you saw him run the red light?
A. There was not enough time. First, I was proceeding across the highway. I never imagined that the vehicle would run the red light in front of me. My first thought was to catch up to the vehicle to where I had the opportunity to stop and pull him over. That opportunity did not come. It was only a matter of a few seconds that elapsed between the time I saw the violation and the time the Malbrough vehicle struck the vehicle in front of me.
Q. You told the plaintiff’s attorney yesterday that you did not want to alert the driver of the vehicle to the fact that you were in pursuit of him and that is why you did not turn on your lights and your siren.
A. I did not want to alert him until I got close enough to the vehicle to eliminate a chase — feeling that if I alerted him prior to this and the subject ran a red light for some oth *47 er offense other than running the red light, that I would start a chase. And, to eliminate the start of a chase, I attempted to gain enough distance on him so that when he saw my lights I would have equal opportunity to stop him rather than be involved in a chase.
For his part, Malbrough could not remember anything about the accident. He did not recall whether he was being chased, he remembered nothing about the wreck, or anything immediately afterwards, until he woke up sometime later in Charity Hospital.
Mr. Briones saw no red flashing lights, and heard no sirens prior to the accident. He heard no squealing tires before the impact, and was unaware of any possible “chase.” Plaintiff testified similarly as to his awareness of the circumstances immediately surrounding the accident, but stated that, while he lay on the stretcher before being taken to the hospital, Victory told him that he (Victory) was “in pursuit of the vehicle that struck us and that he had his lights on.” This latter statement was somewhat of a variance from his deposition. The only other testimony in this vein came from Mrs. Vicknair, who stated substantially the same thing: that Victory told her he was “in pursuit” of the truck and “he told me that he had just turned his lights on.” No one knew how long the lights may have been on or how long the pursuit may have been.
In view of the above testimony, we fail to see how Deputy Victory could be found to be at fault in any degree whatsoever. Of the two parties to the alleged chase, Malbrough remembers nothing, and Victory denies a “chase” took place, although he admits to being “in pursuit.” There was no evidence that he was driving at a high speed and the facts negate the need for a chase and bear out Deputy Victory’s version of the entire story.
Under the facts of this case, it is impossible to state that any action taken by the deputy influenced Malbrough in any way whatsoever, or that Malbrough was even aware of the presence of the police car. There is no direct evidence of any kind to prove that Deputy Victory caused Malb-rough to lose control of his truck, resulting in the accident. Neither was there any circumstantial evidence militating toward the conclusion that a “chase” was in progress. No one else who testified saw or heard anything even resembling a “chase.” We are thus unable to conclude that such an event as a chase took place. The great preponderance of the evidence is decidedly to the contrary.
La.R.S. 32:24,[1] in describing certain exceptions to traffic regulations which an authorized emergency vehicle may exercise, specifically provides that the driver of any such vehicle is not relieved of the duty to drive with due regard for the safety of others. We can discern no lapse of such regard on the part of Deputy Victory.
*48 In summary, plaintiff not only failed to prove negligence on the part of Victory, but also failed to show that any action taken by Victory was a proximate cause of the accident. The sole responsibility for the accident, and plaintiffs injuries, lies with Malbrough.
The appellate court should not disturb a finding of fact unless it is clearly wrong or manifestly erroneous. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). Under Arceneaux, the court is mandated to give a thorough review of the factual finding of the jury. Even if there is “some” evidence to support a finding of fact by the jury, we must reverse if the record reflects that the jury was clearly wrong. Steele v. St. Paul Fire and Marine Insurance Co., 371 So.2d 843 (La.App. 3rd Cir.1979). A jury verdict should be maintained unless the record reflects its conclusions of fact are not supported by the evidence, or its application of the law is clearly erroneous. Jefferson v. Landwehr, 409 So.2d 351 (La.App. 1st Cir. 1981).
The finding by the jury that Deputy Victory was 25% negligent, or guilty of any negligence for that matter, in this case is unsupported by the evidence and therefore manifestly erroneous. Consequently, we are obliged to amend that finding. In fact, this deputy should be commended for being alert and performing his duty in an astute and exemplary manner.
For the foregoing reasons, we amend the verdict of the jury and the judgment of the trial court finding defendant Victory 25% responsible for the accident which injured the plaintiff to reflect that Philip S. Malb-rough is 100% responsible and liable for plaintiff’s injuries and damages; and the trial court is ordered to reform the jury verdict and its judgment accordingly. Because Malbrough has not appealed, and he is the only defendant still cast in judgment, the judgment is affirmed in all other respects. Appellee is to pay all costs of this appeal.
REVERSED IN PART, AMENDED AND AFFIRMED IN PART

. § 24. Emergency vehicles; exceptions
A. The driver of an authorized emergency vehicle, when responding to an emergency call, or when in the pursuit of an actual or suspected violator of the law, or when responding to, but not upon returning from, a fire alarm, may exercise the privileges set forth in this Section, but subject to the conditions herein stated.
B. The driver of an authorized emergency vehicle may:
(1) Park or stand, irrespective of the provisions of this Chapter;
(2) Proceed past a red or stop signal or stop sign, but only after slowing down or stopping as may be necessary for safe operation;
(3) Exceed the maximum speed limits so long as he does not endanger life or property;
(4)Disregard regulations governing the direction of movement or turning in specified directions.
C. The exceptions herein granted to an authorized emergency vehicle shall apply only when such vehicle is making use of audible or visual signals sufficient to warn motorists of their approach, except that a police vehicle need not be equipped with or display a red light visible from in front of the vehicle.
D. The foregoing provisions shall not relieve the driver of an authorized vehicle from the duty to drive with due regard for the safety of all persons, nor shall such provisions protect the driver from the consequences of his reckless disregard for the safety of others.