586 So.2d 583 (1991)
Robert Russell SMITH, et al., Plaintiffs-Appellees,
v.
Kerry J. ENGLISH, et al., Defendants-Appellants.
No. 22,505-CA.
Court of Appeal of Louisiana, Second Circuit.
August 21, 1991.
Rehearing Denied September 19, 1991.
Writ Denied December 13, 1991.
*586 Lunn, Irion, Johnson, Salley & Carlisle by Charles W. Salley, James A. Mijalis, Shreveport, for defendants-appellants, Kerry J. English and MIC County Mut. Ins. Co. of Texas.
Hayes, Harkey, Smith, Cascio & Mullens by Charles S. Smith, John B. Saye, Monroe, for defendants-appellants, State Farm Mut. Auto. Ins. Co., Curtis Lynn Hawkins & Lynn Earl Hawkins.
J. Keith Mullens, Ruston, for plaintiffs-appellees, Robert Russell Smith & Clotill Smith.
C. William Gerhardt & Associates by William F. Kendig, William R. Long, Shreveport, for plaintiff-appellee, Charles Edward Garner & Barbara Garner.
Hudson, Potts & Bernstein by Jay A. Pucheu, Monroe, for third party defendant-appellee, Charles E. Garner.
Before SEXTON, NORRIS and VICTORY, JJ.
NORRIS, Judge.
Defendants Kerry J. English and Lynn Earl Hawkins (father of the minor Curtis Hawkins), and their respective insurers, MIC and State Farm, appeal a judgment against them in a suit for damages arising from an automobile accident. The judgment awarded damages of $126,678.76 and assigned fault 30% to Kerry English and 20% to Curtis Hawkins (50% was assigned to a defendant who was never served and made no appearance, Margaret DeGarmo). An amended judgment decreed that State Farm's policy provided English with primary coverage and MIC's coverage was excess. State Farm, English and Hawkins appeal suspensively; MIC appeals devolutively. All contend the trial court erred in finding English and Curtis Hawkins at fault and in assessing damages for plaintiff Garner's boat and van. We amend and affirm.

Facts
On August 18, 1986 Kerry English was newly employed at Claiborne Gasoline Company. He drove from Port Arthur, Texas to Lisbon, Louisiana, and then around 6:00 p.m. to Ruston to look for a place to live. He was driving his 1983 Chevy Suburban in which he had his clothes, watch and other valuable belongings. He stopped at a service station near the intersection of Hwy. 167 and Interstate 20, parked next to a telephone booth and, leaving the keys in the ignition, went to place a call about a rent house. The line was busy so he went to the restroom. When he stepped out of the restroom minutes later he saw a woman, later identified as Ms. DeGarmo, backing out in his Suburban. English ran up, hopped on the running board and beat on the windshield in an effort to stop her. The thrust of the moving Suburban dislodged him from the running board and he fell to the pavement.
While Ms. DeGarmo was stopped at a red light, English approached a stopped car driven by 16-year old Curtis Hawkins. English told Hawkins his Suburban had been stolen and solicited his help in pursuing the thief. English got in Hawkins's car, requested that he chase the Suburban and assured him that he would "take care of" any traffic tickets or property damage that resulted from the chase.
*587 The "joint venture" of pursuit, as both English and Hawkins termed it, began at that point. They pursued Ms. DeGarmo west on I-20. She took the Cooktown exit and continued on several narrow, curved, rural roads to Homer with Hawkins and English in hot pursuit. Hawkins and English testified they were not cognizant of their speed at all times, but admitted they must have reached 76 to 78 m.p.h. at times. En route to Homer, Hawkins actually passed Ms. DeGarmo twice in attempts to stop her. Both times she "braked hard," made a U-turn in the road and sped off in the opposite direction. Hawkins testified that neither he nor Ms. DeGarmo obeyed all stop signs, though they obeyed some. He also stated that she was driving recklessly and went through some of the curves "so fast."
After turning around in Homer, they continued the chase back toward Ruston on "White Lightning" Road, another narrow, curved, rural road. Hawkins and English testified that they "intentionally backed off" a bit because Ms. DeGarmo was driving "so recklessly."
Some three to five miles before the collision, the defendants passed through the intersection of Hwy. 167 and White Lightning Rd. at Vienna. In deposition, Hawkins testified that Ms. DeGarmo went through this intersection at 70 m.p.h. without stopping but that he had to stop to let an 18-wheeler pass, thus causing him and English to lose sight of the Suburban. At trial, however, Hawkins testified that he did not actually see the Suburban go through this intersection but "assumed" that she did so at high speed without stopping. English testified at trial that he did not remember seeing the Suburban go through the intersection.
After this intersection, Hawkins and English caught sight of the Suburban several times before the collision where White Lightning Rd. intersects Hwy. 33. Ms. DeGarmo ran the stop sign and struck plaintiff Charles Garner's van, in which Garner and plaintiff Robert Smith were riding. The accident caused both Garner and Smith to sustain serious injuries and totalled Garner's van and boat. The instant suit followed.

Action in the trial court
Smith and Garner, and their spouses, sued for damages, personal injury, property damage and loss of consortium against English and MIC, Curtis Hawkins's father and their insurer, State Farm, and Ms. DeGarmo. English and MIC answered and filed a third party demand against Garner and a cross claim against State Farm. Hawkins and State Farm answered and filed third party demands against Garner and Ms. DeGarmo. Ms. DeGarmo was never served and made no appearance.
The matter proceeded to trial in November 1989. The court, in excellent written reasons, found that English and Hawkins continuously pursued Ms. DeGarmo for over 40 miles over a period of about one hour. It further found that their conduct in pursuing her for this distance and time was a cause in fact of the accident; that they had a duty of care to protect against the risk involved; they breached that duty, and the plaintiffs were actually damaged as a result of the breach. The court found the plaintiffs were not at fault and assessed fault to the defendants in the proportions of Ms. DeGarmo, 50%, Hawkins 20% and English 30%. It awarded damages of $61,436.55 to Charles Garner for medical expenses, lost wages, general damages and personal injury, including $14,314.50 for property damage to his van; $55,242.21 to Robert Smith for medicals, lost wages, generals and personal injuries; and $5,000 each to Mrs. Garner and Mrs. Smith for loss of consortium.
State Farm, English and Hawkins suspensively appeal; MIC devolutively appeals, adopting in brief the issues advanced by the other defendants. Ms. DeGarmo has not appealed; the plaintiffs neither appeal nor answer the appeal. The appellants raise the following issues:
(1) The trial court erred in determining that the actions of both English and Hawkins were unreasonable in the situation they found themselves in;

*588 (2) The trial court erred in its duty-risk analysis by determining that the defendants' conduct was a cause in fact of the accident;
(3) The trial court erred in finding English, Hawkins, State Farm and MIC at fault;
(4) The trial court erred in awarding excessive damages for Garner's boat; and
(5) The trial court erred in allowing Garner to recover for his van, which claim had already been paid by Allstate, his own insurer.

Liability of English and Hawkins Applicable legal principles
The standard of conduct required of persons in this state in their relationships with one another as a basis of delictual liability is stated in La.C.C. arts. 2315 and 2316, which provide:
Art. 2315. Liability for acts causing damages
Every act whatever of man that causes damages to another obliges him by whose fault it happened to repair it. * * *
Art. 2316. Negligence, imprudence or want of skill
Every person is responsible for the damage he occasions not merely by his act, but by his negligence, his imprudence, or his want of skill.
Accordingly, the elements of a cause of action in tort are fault, causation and damages. The conduct of which the plaintiff complains must be a cause in fact of the harm. After determining causation, the court must also determine the nature of the duty imposed on the defendant, and whether the risk that caused the accident was within the scope of the duty. A breach of duty on the part of the defendant, which was imposed to protect against the risk involved, makes the offender liable under these code articles. Gresham v. Davenport, 537 So.2d 1144 (La.1989); Vicknair v. Hibernia Bldg. Corp., 479 So.2d 904 (La.1985); Ballew v. Southland Corp., 482 So.2d 890 (La.App. 2d Cir.1986).

Cause in fact
While admitting that English and Hawkins reached high speeds and violated several traffic rules during the chase, the appellants strenuously argue that their conduct in pursuing Ms. DeGarmo for about 40 miles during an hour's time was not a cause in fact of the accident. They contend the sole cause of the accident was the negligence of Ms. DeGarmo in stealing the Suburban and ultimately running the stop sign.
Cause in fact means the causal relationship between the plaintiff's harm and the defendant's alleged negligent conduct. The plaintiff must show that he would not have suffered the injuries complained of but for the defendant's conduct. Wattigny v. Lambert, 408 So.2d 1126 (La. App. 3d Cir.), writ denied 410 So.2d 760 (1981), cert. denied 457 U.S. 1132, 102 S.Ct. 2957, 73 L.Ed.2d 1349 (1982). In other words, the plaintiff must show that the defendant's conduct was a "substantial factor" in bringing about the harm. Dixie Drive It Yourself Syst. v. American Beverage Co., 242 La. 471, 137 So.2d 298 (1962). There can be more than one cause in fact of harm to a plaintiff, as long as each cause bears a proximate relation to the harm and is substantial in nature. Nix v. Brasly, 489 So.2d 1038 (La.App. 1st Cir. 1986). A factfinder's determination as to whether certain conduct is a cause in fact of a plaintiff's injuries is a factual finding and entitled to great weight on appeal. It will not be reversed in the absence of manifest error. Carlin v. Blanchard, 537 So.2d 303 (La.App. 1st Cir.1988).
The trial court initially noted that Ms. DeGarmo's conduct in running the stop sign was a cause in fact of the accident. However, the court further analyzed the conduct of English and Hawkins in bringing about this accident. They admittedly chased Ms. DeGarmo in their vehicle at high speeds over narrow, winding, rural roads, under circumstances where Ms. DeGarmo was obviously aware of being pursued. Their conduct fueled her determination to evade capture and thus was a cause *589 in fact of the accident. The court expressly found that but for their hot pursuit, Ms. DeGarmo would not have run the stop sign and collided with Garner's van and injured the plaintiffs.
The trial court's factual conclusion as to cause in fact is supported by the record and not plainly wrong.

Duty
All persons have a duty to act reasonably under the circumstances. La.C.C. arts. 2315, 2316, 2318. A duty, in negligence cases, may be defined as an obligation, to which the law gives recognition and effect, to conform to a particular standard of conduct toward another. The imposition of a duty depends on a case by case analysis. Gresham v. Davenport, supra.
The driver of a motor vehicle on a road or highway owes a duty to other motorists to drive reasonably and carefully under the circumstances to protect them from injury. Callais v. Allstate Ins. Co., 334 So.2d 692 (La.1976); Andersen v. Craig, 401 So.2d 1022 (La.App. 4th Cir. 1981). The trial court reasonably found that English and Hawkins, in their effort to recover English's property, owed the duty to do so in a manner that would not create an unreasonable risk of harm to the public. See Edwards v. State, 556 So.2d 644 (La. App. 2d Cir.1990). The trial court's finding is not plainly wrong.

Breach of duty
Appellants contend that even if they owed a duty to these plaintiffs, they did not breach it. They rely partly on La.C.Cr.P. art. 214, which permits a private person to arrest anyone who has committed a felony, whether the felony was committed in or out of the private person's presence. They also cite La.R.S. 32:24, which allows the driver of an authorized emergency vehicle, when in pursuit of an actual or suspected law violator, to reasonably disregard certain regulations of the road when such vehicle is using prescribed audible or visible signs.
The trial court astutely observed that while a private person may arrest a felon under art. 214, he may not resort to unreasonable means that endanger innocent third parties. See La.C.Cr.P. arts. 220, 215 C. Likewise, the grant of authority of R.S. 32:24 could not avail the appellants; Hawkins's father's Olds Omega was not an "authorized emergency vehicle" and Hawkins, a 16-year old minor at the time, was not specially trained for the use of such a vehicle. Even so, drivers of such vehicles are neither relieved of the duty to "drive with due care for the safety of all persons" nor insulated "from the consequences of [their] reckless disregard for the safety of others." See Kaplan v. Lloyds Ins. Co., 479 So.2d 961 (La.App. 3d Cir.1985).
The court indicated that under the circumstances here presented it was perhaps not unreasonable for English and Hawkins initially to attempt to thwart Ms. DeGarmo's theft of the Suburban. However, the court felt that after the initial attempt proved futile, a reasonable person should have realized this and not embarked on a protracted high-speed chase over treacherous country roads. Notably, English and Hawkins recognized that Ms. DeGarmo was driving recklessly and they should have anticipated that their continued pursuit would make her even more heedless of traffic laws. See Bolden v. Winn Dixie, 513 So.2d 341 (La.App. 4th Cir.), writ denied 514 So.2d 1177 (La.1987). In light of these considerations, the trial court's finding of a breach of duty is not plainly wrong.

Inclusion of risk within the duty breached
As noted, the general duty of reasonable care that a driver owes to other motorists is to protect them from injury and property damage. Callais v. Allstate Ins. Co., supra; Andersen v. Craig, supra. The critical issue is whether the risk that these plaintiffs would be injured the way they were fell within the duty that these defendants breached. Professor Malone's *590 discussion of duty and risk, as a component of causation, is helpful:
All rules of conduct, irrespective of whether they are the product of a legislature or are a part of the fabric of the court-made law of negligence, exist for purposes. They are designed to protect some persons under some circumstances against some risks. Seldom does a rule protect every victim against every risk that may befall him, merely because it is shown that the violation of the rule played a part in producing the injury. The task of defining the proper reach or thrust of a rule in its policy aspects is one that must be undertaken by the court in each case as it arises. How appropriate is the rule to the facts of this controversy? This is a question that the court cannot escape.
Malone, Ruminations on Cause-In-Fact, 9 Stanford L.Rev. 60, 73 (1956). This court recently reiterated the standard as whether the risk of injury is easily associated with the duty that is sought to be enforced. Edwards v. State, supra; Hill v. Lundin & Asso. Inc., 260 La. 542, 256 So.2d 620 (1972); Robertson, Ruminations on Comparative Fault, 44 La.L.Rev. 1341 (1984).
The facts are undisputed that Ms. DeGarmo ran a stop sign and injured the plaintiffs while trying to escape the unreasonable and unnecessary pursuit of Hawkins and English. As noted, Hawkins and English recognized that Ms. DeGarmo was driving recklessly and should have anticipated that their continued pursuit would make her even more heedless of traffic laws and would greatly enhance the possibility that she would hurt someone. We easily associate risk that an innocent motorist might sustain injury, with the duty of persons like English and Hawkins not to create an unreasonable risk of harm to the public in their attempt to recover English's stolen property. While the impulse to run down a thief may be great, the likelihood that pursuit will worsen her already reckless conduct is too great to ignore. The trial court was not plainly wrong in finding that the risk of this accident was within the scope of the duty owed by these defendants.
Although the instant facts appear to be unique in our jurisprudence, we would like to mention a few cases that are more or less similar, some of which have been cited by appellants or in dissent. In Vicknair v. Malbrough, 482 So.2d 45 (La.App. 5th Cir.), writ denied 484 So.2d 136 (1986), the court reversed a jury verdict that found a deputy 25% at fault in a collision between the plaintiff and a truck which was allegedly being pursued by the deputy. The court absolved the deputy, finding no evidence of a pursuit of any kind and noting it was "impossible to state that any action taken by the deputy influenced Malbrough in any way whatsoever." The same cannot be said in the instant case; the evidence was overwhelming that English and Hawkins embarked on a chase which contributed to Ms. DeGarmo's conduct.
In Jones v. Murray, 250 So.2d 481 (La. App. 1st Cir.1971), the court of appeal affirmed a summary judgment absolving the city of liability in a case where a traffic offender had broken away from police, engaged them in a high speed chase and ultimately collided with the plaintiff. The court noted the traffic offender's testimony in deposition that he had eluded the police before the accident occurred. The evidence was uncontradicted that when the collision occurred, there was no pursuit. Once again, the same statement cannot be made about the instant case.
In Brown v. City of New Orleans, 464 So.2d 976 (La.App. 4th Cir.1985), a police officer chased an Oldsmobile at a speed of 40 to 50 m.p.h. for seven or eight blocks; he maintained a two-block distance from the Olds; and the Olds was going 70 to 80 m.p.h. The Olds then ran a stop sign, killing the plaintiff's decedent. The trial court rendered judgment in favor of the city, which the court of appeal affirmed. The court specifically cited R.S. 32:24, noting the officers' right to exceed the speed limit in pursuit of a violator of the law. The court then stated, without elaboration, "The only person responsible for this tragic accident is Roray Jenkins, the driver of the Oldsmobile." We think it was critical that the pursuing driver, Officer Clark, was a *591 trained law enforcement officer, was driving a marked emergency vehicle, and was traveling at a reasonable pace behind a suspect who was greatly exceeding the speed limit.
In Ducote v. Jackson, 542 So.2d 689 (La. App. 4th Cir.1989), the trial court granted a summary judgment in favor of state troopers who had joined in behind city police who were already involved in a high speed chase; the fleeing vehicle eventually collided with the plaintiffs. The court of appeal stated that "nothing in Mr. Ducote's affidavit refutes that the troopers merely joined in the chase." Without their involvement, the collision probably still would have occurred, thus breaking the chain of causation. Notably, the court did not comment on the police department's potential liability. In the instant case, we cannot say that but for Hawkins and English's conduct this accident probably would not have occurred.
To recapitulate, we concede that none of these cases has ever held the pursuing law officer liable for damages to plaintiffs injured by the pursued person. However, in Vicknair, Jones and Ducote causation was effectively disproved; and in all cases the public policy of permitting law enforcement officers in marked vehicles great latitude in pursuing criminalsgreater than we choose to extend to private citizenswas honored. In the instant case causation is positively proved and these defendants were not entitled to the protection of R.S. 32:24. We would also note that a pursuer on foot was found liable in Bolden v. Winn Dixie, supra.
We stress that we do not subscribe to dictum in the trial court's opinion that English and Hawkins acted "unreasonably in first not retaining the help of * * * law enforcement personnel." Rather, we affirm the holding that their fault lay in continuing an extended vehicular chase after it became apparent with each passing mile that this was a futile effort and continued to influence her conduct. English had a right to use reasonable means to attempt to recover his stolen Suburban, but he had to proceed with due regard for the safety of people on the road like Smith and Garner. Once it became apparent that "hot pursuit" would not stop Ms. DeGarmo and would actually exacerbate her reckless conduct, English should have abandoned the chase and called the police.
In sum, the trial court did not err in concluding that English and Hawkins's conduct was a cause in fact of the accident; that these defendants had a duty not to act unreasonably in attempting to recover English's stolen property; that they breached this duty by pursuing Ms. DeGarmo at high speeds on treacherous roads for a protracted distance and time; that the risk of the accident in question fell within the scope of the duty owed by these defendants; and that the breach of duty caused the plaintiffs to sustain losses. The appellants have contested only the assessment of any fault to them, and not the actual allocation among themselves. Since the finding of fault is affirmed and any adjustment of the allocation would not affect the result, we do not address the issue, but would note that another factfinder may well have assessed a higher percentage to Ms. DeGarmo. The first three assignments do not present reversible error.

Property damage claims: Garner's boat and motor
By their fourth assignment, defendants urge that the trial court did not take depreciation into account in calculating the market value of Garner's boat and motor, and thus the award of $2,100 was excessive.
When an automobile, or boat, has been damaged beyond repair as the result of an accident, the owner is entitled to the market value of the vehicle before the accident, less salvage value, if any. Coleman v. Victor, 326 So.2d 344 (La. 1976). Market value, of course, takes depreciation and other factors into consideration. Cenac v. Duplantis Moving & Storage Co., 407 So.2d 424 (La.App. 1st Cir. 1981). However, no mechanical rule can be applied with exactitude to assess property damage; each case must rest on its own facts and circumstances as supported by proof in the record. Coleman v. Victor, supra. Testimony by an owner of a car or *592 boat as to its value can be sufficient proof with which to sustain an award. Coleman v. Victor, supra. Trial courts have great discretion in determining property damage awards. Cenac v. Duplantis Moving & Storage Co., supra.
Garner testified that the boat was a '79 Skeeter two-seater with a 50 h.p. Evinrude motor that he bought from Reeves Marine in Shreveport in March 1986, some five months before the accident. He testified he had about $2,300 invested in the boat. Garner admitted he was taking the boat to a repair shop on Lake D'Arbonne to be checked out prior to a planned fishing trip to Toledo Bend, but there was no evidence that it needed any repairs, much less extensive work. The boat was damaged beyond repair in the accident.
We conclude that the trial court's award of $2,100 for the market value of the boat is supported by the record and not an abuse of the trial court's great discretion, based on the evidence in this record. This assignment of merit does not present reversible error.

Garner's van
By their final assignment the appellants urge the trial court erred in allowing Garner to recover property damage for his van, when these damages had already been paid by Allstate.
The trial court awarded Garner $14,314.50, the amount he claimed as the actual cash value of the van. See Ex. P-21. Garner admitted in testimony that his insurer, Allstate, had paid him that amount as the actual cash value of the van, less his $100 deductible. The evidence at trial included a certified copy of Garner's Allstate policy, which provides:
Subrogation Rights
When we pay, your rights of recovery from anyone else become ours to the amount we have paid. You must protect these rights and help us enforce them.
The policy further provides for the $100 deductible.
When Allstate paid the collision loss under its policy provisions it became conventionally subrogated to the extent of this payment to Garner's claim against the defendants. La.C.C. art. 1827. This amounted to a partial subrogation.
The procedural law of subrogation is set forth in the Code of Civil Procedure, which provides:
Art. 697. Subrogor and subrogee
An incorporeal right to which a person has been subrogated, either conventionally or by effect of law, shall be enforced judicially by:
(1) The subrogor and the subrogee, when subrogation is partial; or
(2) The subrogee, when the entire right is subrogated.
When, as here, there has been a partial subrogation, and the suit is brought by the subrogor only, there is nonjoinder of a necessary party. La.C.C.P. arts. 642, 697; and art. 697, Official Revision Comment (c); 6 Litvinoff, La.Civil Law Treatise (Obligations), § 22 (1969). If the defendant fails to object timely to the nonjoinder of a necessary party, in a case of partial subrogation, the objection is waived and the court may make an adjudication. However, in such a case if the partial subrogation is in fact proved, the plaintiff may recover only his interest in the partially subrogated claim. Southern Farm Bureau Cas. Ins. Co. v. Sonnier, 406 So.2d 178 (La.1981); La.C.C.P. art. 697, Official Revision Comment (c).
Here the partial subrogee, Allstate, did not appear as a party plaintiff to assert its subrogation rights and the defendants never timely objected to the nonjoinder of this necessary party. However, Garner's testimony proved the subrogation, together with the policy introduced as Ex. P-21. Garner was therefore entitled to recover only his remaining interest in the partially subrogated claim, his $100 deductible. See Mount Beacon Ins. Co. v. Mills, 205 So.2d 144 (La.App. 2d Cir.1967); Jones v. Gentilly Dodge Inc., 397 So.2d 849 (La.App. 4th Cir.1981). Our prior opinion of Peacock's Inc. v. Shreveport Alarm Co., 510 So.2d 387 (La.App. 2d Cir.), writs denied 513 So.2d 826, 827, 828 (1987), is distinguished on its facts.
*593 The trial court erred in awarding Garner the amount paid by Allstate; the judgment will be amended and this item of damages reduced to $100.

Decree
For the reasons expressed, the first paragraph of the judgment of June 26, 1990 is amended to read as follows:
IT IS ORDERED, ADJUDGED AND DECREED that there be judgment in favor of plaintiff, Charles Edward Garner, and against the defendants, Kerry J. English, MIC County Mutual Insurance Company of Texas, Margaret DeGarmo a/k/a Dianne Jones, Lynn Earl Hawkins, Individually, and as Administrator of the Estate of the Minor, Curtis Hawkins, and State Farm Mutual Automobile Insurance Company, jointly, severally and in solido, in the amount of Forty-Seven thousand, Two hundred twenty-two and 05/100 ($47,222.05) Dollars, plus legal interest from date of judicial demand until paid, plus all court costs.
The judgment is in all other respects affirmed. Costs of appeal are assessed one half to appellants and one-half to appellee Charles E. Garner.
AMENDED AND AFFIRMED.
SEXTON, J., dissents and assigns written reasons.
SEXTON, Judge, dissenting.
Today, the majority of this panel holds that a private citizen who witnesses his property being stolen has no right to pursue the thief in an attempt to foil the theft, recover his property, and assist in the capture and arrest of the thief. Because I cannot agree with this proposition, I must respectfully dissent from the majority opinion.
I take issue with the majority's disposal of the issue of duty. The majority holds that the district court's finding that English and Hawkins had a duty not to pursue the stolen vehicle and other valuables was "not plainly wrong." I view the matter as a legal issue and strongly disagree.

[T]he most exasperating and elusive torts problem that a judge must face is the task of determining how far legal protection should extend. Rules are essentially condemned. Reasoned and careful analysis is preferred. Foreseeability is not the only criterion for determining whether there is a duty-risk relationship. Because a risk may foreseeably arise out of certain conduct or omission does not necessarily place that risk within the scope of the duty owed. Neither are all non-foreseeable risks excluded. Inquiry must be made into the ease of associating the injury with the duty that is sought to be enforced against the defendant and into policy reasons that serve to indicate how far, or to what extent, the duty should extend.
Foster v. Lafayette Insurance Company, 504 So.2d 82, 85-86 (La.App. 2d Cir.1987), writ denied, 505 So.2d 61, 65 (emphasis ours).
All rules of conduct are designed to protect some persons under some circumstances against some risks. Seldom does a rule protect every victim against every risk that may befall him, merely because it is shown that the violation of the rule played a part in producing the injury. W. Malone, Ruminations on Cause-In-Fact, in Essays on Torts, at p. 172 (1986).
Whether a legal duty is owed by one party to another depends on the facts and circumstances of the case. In all cases, duty can be stated generally as the obligation to conform to the standard of conduct of a reasonable man under like circumstances. White v. McCoy, 552 So.2d 649 (La.App. 2d Cir.1989).
Thus, we should have first asked whether English and Hawkins had a duty not to follow DeGarmo as she drove away in English's vehicle. Stated another way, did they have a duty to take steps other than, or in addition to, following her in order to prevent her from escaping with the Suburban.
While it is undoubtedly true that a report of this incident to law enforcement authorities would have been a reasonable thing to *594 do, I am unwilling to say that it is unreasonable for an individual who witnesses an unauthorized taking of his vehicle in progress to initiate an immediate pursuit with the assistance of a concerned passerby. I am equally unwilling to find as unreasonable the voluntary assistance of a crime victim by a concerned citizen in the manner undertaken in the instant case.
To conclude otherwise is to place these defendants between Scylla and Charybdis.[1] To not pursue this thief and contact the authorities might or might not have been the better way to prevent the loss of the vehicle and its contents. It might or might not have been the better way to prevent the fleeing felon from harming other citizens by aberrant driving. Indeed, it is reasonable to suppose that the instant pursuit would be perceived as less onerous by the fleeing DeGarmo than an active police chase which would perhaps be accompanied by roadblocks.
I am of the opinion that neither English nor Hawkins acted unreasonably in the pursuit of DeGarmo. Although the record contains evidence that they exceeded the posted speed limit on at least two occasions in the course of following DeGarmo, their actions, taken as a whole, demonstrate that they were cognizant of the safety of others and the rules of the road. Indeed, their two attempts to bring DeGarmo to a stop were apparently executed in a deliberately planned and carefully executed fashion.
In addition, the record shows clearly that English and Hawkins ceased in their efforts to stop DeGarmo and concentrated on following her once it was apparent that their efforts to bring her to a halt would not succeed. I can discern no difference, for the purposes of imposing liability, between a private citizen following a car thief in the hopes she runs out of gas and a law enforcement officer tailgating her with lights flashing and sirens blaring. Given DeGarmo's obvious disregard for her surroundings,[2] it is impossible to say whether the end result would have been any different had she been followed by a law enforcement officer.
Finally, I would call the majority's attention to those cases where Louisiana courts have refused to assess liability to police officers in pursuit of fleeing motorists.
In Vicknair v. Malbrough, 482 So.2d 45 (La.App. 5th Cir.1986), writ denied, 484 So.2d 136 (La.1986), an intoxicated motorist ran a red light in front of a police officer. The officer initiated pursuit, and the offending motorist rear-ended an innocent motorist waiting at the next red light. The district court found the officer 25 percent at fault, but the court of appeal reversed.
Under the facts of this case, it is impossible to state that any action taken by the deputy influenced Malbrough in any way whatsoever, or that Malbrough was even aware of the presence of the police car. There is no direct evidence of any kind to prove that Deputy Victory caused Malbrough to lose control of his truck, resulting in the accident. Neither was there any circumstantial evidence militating toward the conclusion that a "chase" was in progress. No one else who testified saw or heard anything even resembling a "chase." We are thus unable to conclude that such an event as a chase took place. The great preponderance of the evidence is decidedly to the contrary.
Vicknair v. Malbrough, supra at 47 (emphasis ours).
Similarly, in the instant case, the evidence clearly demonstrates that well prior to the accident English and Hawkins were not in hot pursuit of Degarmo, but were *595 merely attempting to maintain contact with her until she ran out of fuel.
In Brown v. City of New Orleans, 464 So.2d 976 (La.App. 4th Cir.1985), police officers engaged in a high speed chase of a stolen vehicle were found not liable to the parents of a man who was killed when the driver of the stolen vehicle failed to yield at an intersection and struck their son's car broadside.
Plaintiffs argue that this case is analogous to Bolden v. Winn Dixie, 513 So.2d 341 (La.App. 4th Cir.1987), writ denied, 514 So.2d 1177 (La.1987), where the defendant supermarket was held liable in damages to a store patron who was knocked down by a fleeing shoplifter. While Bolden is arguably analogous to the instant case, it is clearly contrary to Martin v. Piggly Wiggly Corp., 469 So.2d 1057 (La.App. 2d Cir. 1985), where this court found no liability on the part of the supermarket under similar facts. It should be noted, further, that the Bolden court concluded that the negligence of the defendant supermarket was the failure to properly guard the shoplifting suspect. In other words, they undertook to guard him but did not exercise reasonable care in so doing.
In the instant case, I would simply hold that the actions of the two pursuers were reasonable under the circumstances. If the pursuit was initially a chase, that chase was reduced to "a following" which cannot be regarded as the legal cause of the accident.
Moreover, defendants were under no duty not to pursue a fleeing felon. Indeed, LSA-C.Cr.P. Art. 214 expressly grants a private citizen the right to make an arrest when the person has committed a felony. Additionally, the person making a lawful arrest may use reasonable force to effect the arrest and detention. LSA-C.Cr.P. Art. 220. The efforts of English and Hawkins did not not amount to unreasonable force.
Because I believe that the defendants were under no duty not to follow DeGarmo, I must respectfully dissent from the majority's conclusion to the contrary. I believe the district court judgment should be reversed.

APPLICATION FOR REHEARING
Before MARVIN, SEXTON, NORRIS, VICTORY and BROWN, JJ.
Rehearing denied.
NOTES
[1] In The Odyssey by the Greek poet Homer, Odysseus was confronted at one point in his attempt to return home with having to navigate his ship between Scylla, a cliff-dwelling monster who snatched and devoured sailors from passing ships, and Charybdis, a whirlpool capable of dragging down the entire ship. Thus, Odysseus had the unenviable task of choosing between the loss of part of his ship's crew and the loss of the entire ship and crew.
[2] The coroner of Lincoln Parish, Dr. Rel L. Grey, testified over defense objection in his deposition (at trial the deposition was admitted, subject to defense objection) that he treated Ms. DeGarmo subsequent to the accident and found her to be psychotic, suffering from paranoid schizophrenia with elective mutism and catatonic schizophrenia.