589 So.2d 1219 (1991)
Chester A. ADAMS and Rosalie Adams
v.
CHEVRON U.S.A., INC., and Gulf Marine Transportation, Inc.
No. 90-CA-1750.
Court of Appeal of Louisiana, Fourth Circuit.
November 14, 1991.
Writ Denied January 30, 1992.
*1220 Estelle E. Mahoney, Louis J. St. Martin, P.C., Houma, for plaintiffs/appellants.
Charles F. Seabolt, Len R. Brignac, Milling, Benson, Woodward, Hillyer, Pierson & Miller, and J. Dwight Leblanc, Jr., Kenneth J. Servay, Daniel L. Daboval and Douglas L. Grundmeyer, Chaffe, McCall, Phillips, Tole & Sarpy, New Orleans, for Chevron U.S.A., Inc., Gulf Marine Transp., Inc., and N.F. McCall Crews, Inc.
Before BARRY and PLOTKIN, JJ., and GULOTTA, J. Pro Temp.
PLOTKIN, Judge.
Plaintiffs Chester A. and Rosalie Adams appeal trial court judgments granting directed verdicts in favor of defendants Chevron U.S.A., Inc. (Chevron) and Gulf Marine Transportation (Gulf Marine), as well as a motion for summary judgment in favor of intervenor N.F. McCall Crews, Inc. (McCall). They also seek review of a denial of a motion to recuse the trial judge. We reverse the decisions granting the directed verdicts and the motion for summary judgment, and affirm the judgment denying the recusal. We remand the case to the trial court for further proceedings.

*1221 I. FACTS
Chester A. Adams was injured on January 21, 1987 while being transferred from the vessel M/V HENRY MCCALL to the offshore oil rig to which he was assigned in his employment as a roustabout with Chevron. Adams was inside a "personnel basket" at the time of the alleged injury. Adams reportedly suffered injury to his back and neck when the basket came in contact with the ship's deck and railing during the transfer, which took place in inclement weather.
The M/V HENRY MCCALL was a 110-foot, 99-ton crew boat with four engines which was under charter by Chevron to transfer personnel to offshore rigs. When the boat arrived at the rig, the workers were routinely transferred by means of the basket, which consisted of a flotation ring with a canvas bottom attached to a rope webbing. The Chevron employee handbook instructed workers to place their gear in the center of the ring on the canvas bottom, while they stood on the edge of the ring holding onto the net during the transfer. The actual transfer occurred when a crane on the platform lifted the personnel basket approximately 80 feet in the air, moving the workers from the vessel to the rig.
At the time of the transfer which resulted in Adams' alleged accident, the wind was 35 to 40 knots, the seas were 8 to 12 feet, and the air temperature was 35 to 40 degrees Fahrenheit. The employee safety manual which Adams had been given described the procedure for riding in a personnel basket, but did not contain specific precautions for riding in a basket under severe weather conditions. Additionally, Adams had never received any training in the use of the basket and he had not previously ridden in a basket.
Adams testified that he was very frightened during the transfer because of the weather conditions. Instead of standing on the ring and holding onto the webbing as instructed by the employee manual, Adams chose to climb into the center of the ring with his gear, because he thought he would be safer there. He was unable to stand up inside the ring. No one told Adams that he should not ride in the basket in that manner.
Adams reported to his supervisor when he arrived on the rig that he had injured his neck and back while in the basket; he also made an accident report at that time. The next morning, when the weather was fine, Adams was transported by helicopter to shore, where he was treated by Dr. William Kinnard, an orthopedic surgeon.
A CT scan revealed a herniation of Adams' C5-6 disc and an abnormality or bulging at the L4 and L5 vertebrae. As a result of the injury, Adams underwent a cervical discectomy and fusion. Dr. Kinnard testified that Adams has a permanent 10 percent whole body, neck, and lower back disability. Adams has been unable to continue working offshore. He began a paralegal course, but was unable to complete it because of memory problems stemming from a brain tumor unrelated to the accident in question here.
Adams filed suit for personal injury, and his wife, Rosalie, filed for loss of consortium. Named as defendants were Chevron, the time charterer of the vessel, and Gulf Marine, the owner of the vessel under the general maritime law. Chevron intervened as plaintiff's employer for reimbursement of the worker's compensation and medical benefits it had paid under the Longshore and Harbor Workers' Compensation Act. McCall, which supplied the crew which worked on the vessel, filed a petition to intervene as a defendant, which was granted by the trial court. Plaintiffs also filed a supplemental and amending petition for punitive damages against all three defendants; that petition was dismissed by summary judgment prior to trial.
Following a three-day jury trial at the close of plaintiffs' case, plaintiffs and defendants moved for directed verdicts. The trial court granted a directed verdict in favor of Chevron and Gulf Marine and denied the directed verdict in favor of McCall, giving the plaintiffs additional time for discovery since McCall's intervention occurred immediately prior to trial. The plaintiffs' motion for directed verdict was also denied.
*1222 Judgment dismissing plaintiffs' claims against Chevron and Gulf Marine was entered on May 23, 1990. On June 18, 1990, McCall filed a motion for summary judgment, which was granted on September 21, 1990. Plaintiffs appeal both the May 23 and September 21 judgments.

II. DIRECTED VERDICTS
Plaintiffs contend that the trial court erred in granting directed verdicts in favor of defendants Chevron and Gulf Marine, and in denying their motion for directed verdict.
"A motion for directed verdict is properly granted whenever, considering the evidence in the light most favorable to the non-moving party, the facts and inferences are so overwhelmingly in favor of the mover that the court believes that reasonable persons could not arrive at a contrary verdict." Poirrier v. Trailmobile, Inc., 550 So.2d 1349, 1350 (La.App. 4th Cir.1989), writ denied 556 So.2d 58 (La.1990).

A. Granting Directed Verdict in Favor of Defendants

For purposes of determining whether the trial court properly granted the motions for directed verdict filed by defendants Chevron and Gulf Marine, we must consider the evidence in the light most favorable to the plaintiffs, who were the non-moving parties. When considered in that light, the record may be summarized as follows: A meteorologist and Adams' co-workers testified that the weather conditions were severe and that possible gale conditions existed at the time of the transfer, but that weather conditions had abated within a few hours after the transfer. Several witnesses testified that the personnel basket moved around on the deck and hit the railing during the plaintiff's transfer. The evidence further indicated that no means of communication between the vessel and the crane operator was provided; thus, the personnel in charge could not stop the transfer either because of the severity of the weather conditions or because they saw plaintiff incorrectly enter the interior of the basket. Additionally, no tag line was attached to the basket to prevent it from moving around, and no crew members were present to assist or instruct the plaintiff in the proper way of entering and riding in the personnel basket, or to stop or correct him when he got into the basket improperly.
The record also indicates that the day of the accident was the first time that the plaintiff had ever ridden in a personnel basket and that he had not been instructed concerning the proper way to enter and ride in such a basket. Furthermore, the supervisor of the charterer, Mr. Chouest, was present and in a position where he could see the danger of the situation, but did nothing to stop it, and probably could not communicate with the crane operator.
Despite the above evidence, the trial judge entered directed verdicts in favor of defendants Chevron and Gulf Marine at the close of the plaintiffs' case. In his oral reasons for judgment, the trial judge found that the plaintiffs had failed both to prove the standard of care owed by the defendants and to prove a violation of that standard. The plaintiffs contest this ruling, making two claims: (1) that they were not required to prove the standard of care in a maritime personal injury case, and (2) if they were required to prove the standard of care, their failure to do so was caused by the trial court's improper exclusion of expert testimony offered by Captain Timothy Torrence.

1. Proof of Standard of Care

The plaintiffs' first argument is correct. The plaintiff in an admiralty case generally has no duty to prove the law regarding the standard of care, unlike a plaintiff in a medical malpractice case. Lewis v. Timco, Inc., 716 F.2d 1425, 1427 (5th Cir.1983). Maritime tort cases apply the general maritime law, not state tort law, unless there are significant state policy considerations involved. Id.
In Louisiana, general maritime law applies. Under the general maritime law, the standard of care owed by a vessel owner toward persons aboard the vessel other than crew members is "reasonable care *1223 under the circumstances of each case." Kermarec v. Compagnie Generale Transatlantique, 358 U.S. 625, 630-31, 79 S.Ct. 406, 409-10, 3 L.Ed.2d 550 (1959). Therefore, the plaintiffs in the instant case were required only to present factual evidence that the defendants violated that standard of care.
2. Exclusion of Expert Testimony
In the instant case, plaintiffs attempted to prove violation of the standard of care through the testimony of a number of witnesses, including other workers who were transported at the same time as the plaintiff, the Chevron regional manager, the Chevron platform foreperson, and a meteorologist. These witnesses established that, aside from being given a manual to read, Adams had received no training in the proper way to ride in a personnel basket. They further established that the weather on the day of the accident was dangerous, with gale conditions, which one witness described as a Grade III Gale.
The plaintiffs also attempted to present the expert testimony of Captain Timothy Torrence, a vessel captain with nearly thirty years of experience on different types of vessels. Although Captain Torrence was permitted to testify on limited subjects, the trial judge excluded his testimony on the following issues: negligence of Chevron and Gulf Marine in causing the accident, plaintiff's lack of comparative negligence, safety in vessel operations, standards of good seamanship, and violation of the standards of good seamanship on the part of Chevron and Gulf Marine. The plaintiffs claim that the trial judge erred in limiting Captain Torrence's testimony and that that error prevented them from meeting their burden of proof.
Admissibility of expert testimony is governed by the following articles from the Louisiana Code of Evidence:
Art. 702. Testimony by experts
If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.
Art. 704. Opinion on ultimate issue
Testimony in the form of an opinion or inference otherwise admissible is not to be excluded solely because it embraces an ultimate issue to be decided by the trier of fact....
(Emphasis added.)
Although a trial judge has much discretion in determining whether to qualify a witness as an expert, that discretion is not unlimited. Experts who qualify under the relevant provisions of the Louisiana Code of Evidence should be allowed to testify because the jury is entitled to hear all evidence which will assist it "to understand the evidence or to determine a fact in issue." La.C.E. art. 702.
The United States Fifth Circuit Court of Appeal has recently interpreted F.R.E. 403, after which the Louisiana rules on expert testimony are patterned. Christophersen v. Allied-Signal Corp., 939 F.2d 1106 (5th Cir.1991). The court delineated the following four inquiries for determining the admissibility of expert testimony: (1) whether the witness is qualified to express an expert opinion, (2) whether the facts upon which the expert relies are the same type as are relied upon by other experts in the field, (3) whether in reaching his conclusion the expert used well-founded methodology, and (4) assuming the expert's testimony passes these tests, whether the testimony's potential for unfair prejudice substantially outweighs its probative value under the relevant rules. Id. We adopt those standards as appropriate for evaluating the admissibility of expert testimony under Louisiana law.
During the qualification phase of his testimony, Captain Torrence stated that he had almost 30 years of experience in the operation of different types of vessels, many of which were similar to the M/V HENRY MCCALL, including an 82-foot, two-engine vessel. He served in the Coast Guard for twenty years; for sixteen of those years he was the officer in charge of rescue vessels. His duties included search *1224 and rescue, as well as enforcement of federal laws and Coast Guard regulations. He also had to write reports concerning the causation of accidents.
Captain Torrence stated that his work at the time of the trial involved the use of personnel baskets to transport workers to supertankers. He stated that problems with such transfers generally occurred in bad weather, not in good weather. He testified that he would not have allowed the personnel basket transfer to proceed under the weather conditions present at the time of plaintiff's transfer, except in emergency situations when it was necessary to save a person's life. Captain Torrence stated that the lack of direct communication between the vessel captain and the crane operator at the time of the transfer presented a problem, as did the fact that passengers had no means of communicating with the captain concerning their lack of expertise with personnel baskets since the captain would have been in the pilot house where passengers were not allowed.
On the general duty of ship captains, Captain Torrence testified that the captain is ultimately responsible for the safety of passengers on the vessel, including those passengers who are disembarking. He stated that, given the air and water temperatures at the time of Adams' transfer, a grave danger of hypothermia existed if a person fell into the water. Additionally, he stated that a person could probably only survive for three or four minutes under those circumstances. His opinion concerning the possible violation of Coast Guard regulations against reckless and negligent operation was excluded.
La.C.E. art. 702 states that experts may be qualified by reason of "knowledge, skill, experience, training, or education." Thus, formal education in the area of expertise is not required; "experience alone is enough to qualify a witness as an expert." Aaron v. Bankers and Shippers Ins. Co., 475 So.2d 379, 382 (La.App. 1st Cir.1985).
Although Captain Torrence stated that he had extensive experience in personnel basket transfers since his work often involved three to ten such transfers per day, the trial judge excluded his testimony on personnel basket transfer safety. The trial judge justified his decision by stating, in his oral reasons for granting the directed verdict, that Torrence was not qualified to give opinion testimony concerning "safety and safe practices," although he was qualified as an expert in vessel operations.
By reference to the four inquiries established in the Christophersen case, we find that Captain Torrence was qualified to testify on the issues excluded at trial. Captain Torrence was certainly qualified in vessel operations, and we are satisfied that he was also qualified to give opinion testimony as to matters of safety by virtue of his many years of experience as a vessel operator. Additionally, the record indicates that the facts upon which Captain Torrence relied were the same type which would have been relied on by other experts in the field, and that Captain Torrence used well-founded methodology. Finally, the potential for unfair prejudice from the opinion did not substantially outweigh its probative value.
The United States Fifth Circuit Court of Appeal recently issued an unpublished decision finding specifically that Captain Torrence was qualified by reason of his vast experience to give opinion testimony on "the safety of ... seamanship practices." Smith v. United Gas Pipeline Co., No. 88-3116, slip op. at p. 10 [857 F.2d 1471 (table)] (5th Cir.1988). Finding that the trial court's failure to allow Captain Torrence's opinion testimony was reversible error, the Fifth Circuit stated specifically that the testimony "would have been of obvious aid to the trier of fact." Id. Certainly Captain Torrence's testimony in this case would have assisted the jury "to understand the evidence or to determine a fact in issue." La.C.E. art. 702. Therefore, we hold that the trial court abused its discretion in disallowing Captain Torrence's testimony on the safety issues and the other issues related to the case.
The record in this case does not include the plaintiff's proffer of Captain *1225 Torrence's testimony. Therefore, it is impossible for us to review that evidence and determine whether the plaintiffs met their burden of proof on the essential elements of their case. For that reason, we are unable to determine whether the trial judge correctly entered the judgment granting the directed verdicts in favor of Chevron and Gulf Marine. The evidence outlined above in addition to the proposed testimony from Captain Torrence could be sufficient to prove that one or more of the defendants breached its duty to the plaintiff, and that the breach of that duty caused plaintiff's injuries. We cannot conclude with certainty that a reasonable jury could not have arrived at a verdict finding the defendants negligent. Therefore, the question should have gone to the jury and the judgment granting directed verdicts in favor of the defendants were clearly erroneous. The judgment is reversed, and the case is remanded for retrial.

B. Denying Plaintiffs' Motion for Directed Verdict

Plaintiffs moved for a directed verdict on the issues of the negligence of the defendants, the lack of comparative negligence on Adams' part, and causation. The trial judge correctly denied this motion. Viewing the record in the light most favorable to the non-moving defendants, we cannot conclude that the evidence and the inferences therefrom were so unequivocably in favor of the plaintiff that reasonable men could not arrive at a contrary verdict, as required for the granting of a motion for directed verdict. As in the case of defendants' motion, the record does not contain specific grounds supporting the motion. For these reasons, the trial court's denial of the plaintiffs' motion for directed verdict is affirmed.

III. INTERVENTION AND MOTION FOR SUMMARY JUDGMENT IN FAVOR OF McCALL
Plaintiffs contend that the trial court erred in denying its exceptions to McCall's intervention and in granting McCall's post-trial motion for summary judgment.
McCall filed its petition of intervention on April 6, 1990; the trial court granted the petition. On application for supervisory writs filed by the plaintiffs, this court found no abuse of discretion in granting the intervention. Adams v. Chevron, No. 90-C-0853 (La.App. 4th Cir. May 15, 1990), writ denied 561 So.2d 107 (La.1990).
The intervention was granted immediately prior to trial. At trial, plaintiffs introduced evidence relating to the alleged negligence of Chevron and Gulf Marine, including the deposition testimony of James M. Gallagher, McCall's captain of the vessel.
Summary judgment is proper only when the pleadings, depositions, answers to interrogatories, admissions, and affidavits in the record reveal no genuine issue of material fact and indicate that the mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966. Hovis v. Marine Drilling Co., 541 So.2d 416, 418 (La.App. 4th Cir.1989).
In the instant case, genuine issues of material fact concerning McCall's alleged negligence exist, especially if the proposed testimony of Captain Torrence is considered. Therefore, summary judgment was not appropriate. The judgment is reversed and the issue of McCall's negligence is remanded to the trial court.

IV. PUNITIVE DAMAGES
Plaintiffs filed a supplementary and amending petition requesting punitive damages from all defendants. On May 14, 1990, the trial court granted partial summary judgment on the issue of punitive damages. This was a final judgment as to this issue, and could have been appealed at the time it was issued.
Plaintiffs failed to file a motion for a new trial or a notice of appeal within the required period of time. LSA-C.C.P. arts. 1974, 2123; see art. 2087. They filed a notice of appeal of the May 23, 1990 judgment on June 21, 1990, but did not indicate that they intended to appeal the May 14 judgment.
*1226 A judgment becomes final when the time fixed by law for appeal has elapsed without the filing of an appeal. LSA-C.C. 3556(31). Since the plaintiffs failed to appeal the granting of the motion for partial summary judgment on the punitive damage issue within the proscribed time period, that issue is res judicata and may not be considered by this court at this time. Serrate v. Serrate, 472 So.2d 137, 139 (La.App. 5th Cir.1985). The claim for punitive damages is dismissed.

V. RECUSAL OF TRIAL JUDGE
The plaintiffs moved for recusal of the trial judge prior to trial. The motion was heard by a different judge at Orleans Parish Civil District Court, who concluded that recusal was unnecessary. The plaintiffs have appealed that ruling. However, the transcript of the recusation hearing is not a part of the record on appeal. Since there is no record of the proceedings to review, we affirm the decision of the trial judge denying recusation.

VI. CONCLUSION
For the foregoing reasons, we reverse the trial court judgment granting motions for directed verdict in favor of defendants Chevron and Gulf Marine and the judgment granting the motion for summary judgment in favor of McCall. We affirm the judgment denying the motion for directed verdict filed by plaintiffs Chester A. and Rosalie Adams and the judgment denying the plaintiffs' motion for recusation of the trial judge. The judgment granting the partial motion for summary judgment on the issue of punitive damages is not considered because it was not timely appealed. The case is remanded for further proceedings consistent with this decision.
AFFIRMED IN PART; REVERSED IN PART; REMANDED.