647 So.2d 398 (1994)
SOUTHERN MESSAGE SERVICE, INC., Plaintiff-Appellant
v.
COMMERCIAL UNION INS. CO., et al., Defendants-Appellees.
No. 26311-CA.
Court of Appeal of Louisiana, Second Circuit.
December 7, 1994.
Writ Denied March 10, 1995.
*399 Tyler & Johnson by Tommy J. Johnson, Shreveport and Kantrow, Spaht, Weaver & *400 Blitzer by Carlos G. Spaht, Baton Rouge, for appellant.
Cook, Yancey, King & Galloway by Brian A. Homza and Bodenheimer, Jones, Klotz & Simmons by Mary L. Coon Blackley, Shreveport, for appellees.
Before MARVIN, SEXTON and STEWART, JJ.
STEWART, Judge.
In this action in which it was stipulated by all litigants that a roofing contractor was negligent in failing to adequately protect plaintiff's building and its contents against rainwater damage, the plaintiff, Southern Message Service, Inc., appeals the trial court's judgment, seeking to increase (1) the award of damages against the roofing contractor and (2) the attorney fee and statutory penalty assessed against plaintiff's property insurer who was found to have acted arbitrarily, capriciously, without probable cause in the manner in which it adjusted plaintiff's claim.
The roofing contractor, McWaters, and his liability insurer, Northern Assurance Company of America, also appeal, seeking to reduce the award of damages and have plaintiff found comparatively negligent because of its failure to minimize its loss after the rainwater damage occurred. Plaintiff's property insurer, Zurich Insurance Company, who was subrogated to $22,250 it paid plaintiff, does not appeal the amounts for which it was cast, the 12 percent penalty on $58,675, the total monetary damages, and the $5,000 attorney fee. As appellee, Zurich argues against increasing the awards against it.
We affirm in all respects.

FACTS
Southern Message Service, Inc., a company in the radio common carrier industry, stored some of its radio paging equipment in a warehouse at 709 Crockett Street in Shreveport, Louisiana. The equipment consisted primarily of older model pocket pagers and mobile, non-cellular, rotary dial phones requiring antenna and base station for operation. Southern Message contracted with defendant-appellee, Mike McWaters d/b/a Mike McWaters Construction and Roofing Company, to repair the warehouse roof. During the night of February 16, 1988, while repair work was in progress, a storm erupted. McWaters had inadequately covered the roof with plastic, allowing rainwater to seep into the equipment.
Southern Message contacted its property insurer, Zurich Insurance Company, providing it with a list of the damaged goods. Robert W. Kupp of RE Electronics Service Corporation investigated the premises for Zurich and reported that damages totaled $22,500. Southern Message, through Leo Wiman, gave Zurich a proof of loss statement, indicating that $142,329 worth of property had been damaged. Zurich rejected this figure and asked Southern Message to execute another proof of loss statement in the amount of $22,250, which represents the $22,500 estimate provided by Kupp less a $250 deductible. Southern Message refused the request.
On February 10, 1989, Southern Message filed suit against McWaters and his insurers, Commercial Union Insurance Company and Northern Assurance Company of America[1], and against its own insurer, Zurich. After suit was filed, and more than a year after the property was damaged, Zurich tendered unconditional payment of $22,250.
At trial it was stipulated that McWaters and Northern were liable for the damage. Thus, the issues were limited to the amount of damages, if any, and whether penalties and attorney's fees should be assessed against Zurich for arbitrary and capricious behavior. The trial court found the testimony and evidence sufficient to conclude that most of the equipment had water damage or "detrimental contact with water." The court found that because of rapid technological advances, most of the damaged equipment was obsolete.
*401 Southern Message provided the court with expert testimony on the value of the equipment. Henry A. Frieberger, an electrical engineer, opined that the Pagecom Pagers and the Pageboy Pagers were valued at $50 each, for a total of $13,800. The rotary dial mobile telephones were valued at $57,000. The court acknowledged that Frieberger did not fully consider the obsolescence of the pagers when arriving at these figures.
The defendants also introduced expert testimony on the issue of damages. One defense expert, Mike Woelfel, appraised the pagers at between $10 and $20 each, for a total of $5,520. He assessed the telephones with a depreciated total value of $11,400.
The trial court assigned a $25 value to each of the 276 pagers, for a total of $6,900 and valued the telephones at $45,600. To arrive at the total damage figure, the court took $111,175, which was Southern Message's total damage estimate of the cost to repair or replace the damaged equipment, and subtracted the $6,900 value of the pagers and the $45,600 value of the telephones, for a total of $58,675, of which $22,250 is due Zurich.
Additionally, the court found that Zurich acted arbitrarily, capriciously, and without probable cause in failing to promptly tender payment to Southern Message. Hence, the court imposed a 12% penalty for the difference between the amount tended, or $22,250, and the amount of damages ultimately determined, or $58,675. Moreover, the court ordered that Zurich pay $5,000 in attorney's fees.
Southern Message appeals the judgment, asserting errors in the court's accepting witnesses as experts and in assessing inadequate damages, penalties, and attorney's fees. In response, Northern contends that Southern Message failed to meet its burden of proving that the equipment was damaged, that Southern Message was comparatively negligent, and that the trial court erred in admitting into evidence a report made by Dr. Melvin Zemek, who had died by the time the case went to trial.
For the following reasons, we affirm.

Expert Witnesses
Southern Message contends that the trial court abused its discretion in accepting Robert Kupp and Mike Woelfel as experts in the field of valuation of radio common carrier equipment. Both witnesses were called by the defendants. In its reply brief, Northern argues that Southern Message's witness, Henry A. Frieberger was not qualified to testify as an expert.
The authority for allowing opinion testimony by expert witnesses is found at LSA-C.E. Art. 702 and provides:
If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.
The trial court is vested with broad, albeit not unfettered, discretion in determining whether a witness qualifies to testify as an expert in his field. LSA-C.E. Art. 702 comment (d); Manchack v. Willamette Industries, Inc., 621 So.2d 649 (La.App. 2d Cir. 1993).
Because the Louisiana Code of Evidence is substantially a mirror image of the Federal Rules of Evidence, Louisiana courts often follow the example set by their Federal counterparts when deciding how to interpret code articles. Recently, the United States Supreme Court promulgated a new standard for the admission of expert testimony in Daubert v. Merrell Dow Pharmaceuticals, ___ U.S. ___, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). That standard was adopted by our Supreme Court in State v. Foret, 628 So.2d 1116 (La.1993) and, therefore, will be used by this court as well.[2]
*402 To determine whether a witness is an expert, the court is guided by two primary concerns: whether the witness plans to testify to actual technical knowledge and whether such knowledge will assist the trier of fact in understanding or determining a fact in issue. Clement v. Griffin, 91-1664, 92-1001, 93-0591 to 0597, 93-0648 (La. 03/03/94), 634 So.2d 412, citing Daubert v. Merrell Dow Pharmaceuticals, supra. In doing so, the court may inquire into the "testability" of the expert's theory or technique, whether the theory or technique has been subjected to peer review and publication, the known or potential rate of error, and whether the methodology is generally accepted in the scientific or technical community. Clement v. Griffin, supra. In adopting this new standard, the Louisiana Supreme Court in Foret declared the standard's purpose as raising expert testimony to a "threshold level of reliability in order to be admissible under LSA-C.E. Art. 702." Foret, supra. With that in mind, we consider the admissibility of expert witnesses in the case before us.
Robert Kupp was called by the defendants to testify as to the value of the damaged equipment. Southern Message asserts that Kupp should not have been accepted as an expert in the field of radio common carrier equipment because he lacked experience and knowledge in the sales, marketing, and valuation of such.
According to the record, Kupp is a registered chemical engineer with professional engineer accreditation. He has more than thirty years of experience in chemical and mechanical engineering. He was once a professor of nuclear engineering at New York Polytechnic Institute and an adjunct associate professor at New York University. He contributed major technical papers to the National Science Foundation, Columbia University, and Princeton, among other places. In the field of nuclear engineering, Kupp worked during World War II with state of the art electronic and automated electronic equipment. Following that, he was employed at an architect engineering firm, performing engineering design work for chemical and nuclear plants. He ultimately started his own company, specializing in nuclear and engineering consultation. At the time he examined the equipment at issue, he worked for RE Electronics, where he appraised and evaluated electronic equipment exposed to water, smoke, and fire. RE Electronics specializes in the restoration of electronic and other technical equipment which has been damaged by various contaminants.
Southern Message argues that while Kupp's job involved examining damaged electronic equipment, he never worked with radio paging equipment and was not experienced at valuing the equipment at issue. Nevertheless, because Kupp's credentials demonstrate his expertise in the field of electronic equipment, we do not find that the trial court abused its discretion by accepting him as an expert.
Southern Message also questions the expertise of Michael Woelfel. Woelfel testified that he graduated from Purdue University with a degree in engineering. While at Purdue, he majored in mechanical engineering and minored in electrical engineering. At the time of trial, he worked for RE Electronics in New Jersey. He ascertains the value of the equipment he restores to determine whether restoration is a cost-effective option. In valuing such equipment, Woelfel employs the methodology used by other experts in his field. Woelfel has previously given opinions as to the value of electronic equipment, both depreciated value and actual cash value. He has consulted on between 230 and 240 jobs during his employment with RE Electronics. On previous occasions, Woelfel has qualified as an expert in the field of electronic equipment, specifically in evaluating electronic equipment and arriving at its value.
Woelfel's expert opinion could have aided the trial court's assessment of damages. The trial court did not abuse its discretion in admitting Woelfel's expert testimony.
Northern contends that Henry A. Frieberger should not have been accepted as an expert because he was merely a sales representative for Motorola, because Southern *403 Message had been one of his customers, and because he had never worked on such an assignment before.
Frieberger earned a bachelor of science degree in electrical engineering from Texas A & M University and thereafter attended various technical courses. He holds memberships in the Institute of Radio Engineers, American Institute of Electrical Engineers, and Radio Club of America. He operates amateur radios and has held its highest class license for approximately 40 years. He also has an FCC license of the highest class, known as a General Radio Telephone Certificate. His employment history includes jobs in electrical engineering for power companies as well as 33 years as a radio communication engineer for Motorola. Because he was in the business of supplying, installing, and generally working with radio equipment, Frieberger kept current on the competition and is knowledgeable in repairing and the cost of repairing radio equipment.
Frieberger did not acknowledge the obsolescence of Southern Message's equipment. The trial court expressly mentioned this when weighing and assessing his testimony.
Based on his knowledge, skills, and education, we find that the trial court could have found Frieberger acceptable as an expert in his field.

Melvin Zemek's Report
Northern objected at trial to the admissibility of a report made by Melvin Zemek. Zemek was retained by Northern early on in the proceedings. He issued a report on the damage, concluding that the equipment was worthless. Counsel for Southern Message offered the report into evidence. The trial court allowed it over Northern's objection that it was hearsay. In overruling the objection, the trial court stated that because the court was the finder of fact, it knew to give the report the weight it deserved. The court also stated that it was allowing the report because Southern, by offering it, waived its right to cross-examine Zemek.
The former testimony of an unavailable expert witness is not admissible as an exception to the hearsay rule. LSA-C.E. Art. 804 B(1). Thus, the court erred in allowing Zemek's report into evidence. However, in the absence of prejudice, error does not warrant reversal. Stapleton v. Great Lakes Chemical Corp., 616 So.2d 1311, writ granted 620 So.2d 856, 620 So.2d 856, two cases, affirmed in part, vacated in part, 627 So.2d 1358, rehearing denied. The inquiry for determining whether a party was prejudiced is whether the error, when compared to the entire record, has substantial effect on the outcome of the case. Stapleton v. Great Lakes Chemical Corp., supra.
The trial court effectively gave the report limited weight. Furthermore, in its written reasons for judgment, the court did not include the Zemek report when discussing the expert testimony. Northern has failed to demonstrate what possible substantial prejudicial effect, if any, the report had on the trial court's judgment.

Burden of Proof
Northern complains that Southern Message did not meet its burden of proving that the equipment stored in the warehouse was actually damaged. It bases this complaint on testimony indicating that rainwater is pure and not contaminated and that only contaminated water could cause damage. It further alleges that because of their design and packaging, the mobile phones could not have been damaged.
In a civil action, the plaintiff bears the burden of proving each element of his claim by a preponderance of the evidence. Corley v. Craft, 571 So.2d 718 (La.App. 2d Cir.1990). Proof by a preponderance of the evidence means that the evidence, when taken as a whole, shows that the fact to be proven is more probable than not. Crowell v. City of Alexandria Through Snyder, 558 So.2d 216 (La.1990); Bradley v. Manville Forest Products, 616 So.2d 280 (La.App. 2d Cir.1993).
The trial court is given great discretion in determining whether the burden of proof has been met. A court of appeal may not set aside findings of fact by the trial court in absence of manifest error or unless it is clearly wrong. Lirette v. State Farm *404 Ins. Co., 563 So.2d 850 (La.1990). Where there is conflict in testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed on review even though the appellate court may feel that its own evaluation and inferences are as reasonable. Alaywan v. Commercial Union Ins. Co., 625 So.2d 243 (La.App. 2d Cir.1993); Lirette v. State Farm Ins. Co., supra. Only the fact finder sees first hand the variations in demeanor and tone of voice that bear so heavily on the listener's belief in what is said. Alaywan v. Commercial Union Ins. Co., supra.
The court concluded that the testimony of Jeff Bussey, Leo Wiman and Henry Frieberger, along with other evidence presented by Southern Message, proved by a preponderance that the equipment had sustained water damage or detrimental contact with water. While there may have been testimony to the effect that rainwater alone could not have caused the damage, there was also testimony indicating that, given the variables at work herein, damage to the equipment was more than likely. For example, Frieberger testified that water coming into contact with radio equipment must be dried immediately to prevent damage. Frieberger tested the equipment for two days to determine the extent of the damage, if any, concluding that some damage had occurred. Kupp's testimony to the contrary notwithstanding, the trial court concluded that the testimony of Frieberger tended to prove Southern Message's claims. That conclusion cannot be clearly wrong or manifestly erroneous.

Damages
In any suit for damages, the plaintiff bears the burden of proving his monetary damages. Borden Inc. v. Howard Trucking Company, Inc., 454 So.2d 1081 (La. 1983); Gonzales v. Bordelon, 595 So.2d 761 (La.App. 4th Cir.1992). When property is damaged by the fault of another, the primary objective is to restore the property as nearly as possible to the state it was in immediately preceding the accident. Coleman v. Victor, 326 So.2d 344 (La.1976); Murphy v. K.D. Auger Trucking, Inc., 598 So.2d 443 (La.App. 2d Cir.1992), writ denied 600 So.2d 685 (La. 1992). The property owner is entitled to the market value of the equipment before the incident, less salvage value, if any. Coleman v. Victor, supra; Smith v. English, 586 So.2d 583 (La.App. 2d Cir.1991). Market value takes depreciation and other factors into consideration. Smith v. English, supra. However, no mechanical rule can be applied with exactitude to assess property damage; each case must rest on its own facts and circumstances as supported by proof in the record. Coleman v. Victor, supra; Smith v. English, supra.
The trial court is afforded great discretion in this area. Smith v. English, supra. We determine whether the trial court has abused its discretion in awarding damages by interpreting the evidence in the light that most favorably supports the judgment. Graham v. Edwards, 614 So.2d 811 (La.App. 2d Cir.1993); Higginbotham v. Ouachita Parish Police Jury, 513 So.2d 537 (La.App. 2d Cir.1987).
According to Southern Message, the damage award is abusively low and the trial court should not have utilized Northern's "alternative theory" which it claims lacked evidentiary support. Frieberger testified that the depreciated market value, taking into account the cost of examining, testing, repairing, and/or replacing the equipment, totaled $111,175. Frieberger did not, as the trial court noted, take into consideration the fact that the equipment was obsolete. Woelfel testified that because the equipment was basically obsolete, its depreciation and market value were much lower than that value estimated by Frieberger.
The trial court explained that its use of the "alternative theory" was a result of the great discrepancy between the parties' damage estimates. The trial court's judgment is a compromise of each litigant's damage estimates. Southern Message was awarded an amount between what the trial court saw as two extremes. Although the "alternative theory" was not presented at trial, the court was able to use the estimates actually presented at trial to reach a fair and just award. Thus, the court did not select arbitrary *405 figures in calculating its award which was based on the evidence presented. The court considered the expert testimony, even discounting Frieberger's failure to consider the obsolescence of the equipment.
In viewing the evidence in the light that most favorably supports the judgment, we conclude that the award of $58,675 is not an abuse of the trial court's discretion.

Comparative Negligence
Northern claims that the award should be reduced to reflect Southern Message's negligence in failing to store the damaged equipment in an air conditioned room. Prior to trial, it was stipulated by all parties that McWaters and his insurer, Northern, were negligent in failing to properly cover the roof, thereby allowing the radio equipment to get wet. Now Northern asserts that Southern Message is negligent for how it dealt with its equipment after the water damage occurred.
Southern Message is required to mitigate its damages. Failure to do so may result in a reduction of those damages. LSA-C.C. Art. 2002. The trial court found that Southern Message did not fail to mitigate its damages and was not comparatively negligent in failing to take reasonable precautions to safeguard, protect, or move the equipment. However, Northern contends that the evidence suggests that any damage done to the equipment happened some time after the equipment got wet. Northern's expert, Robert Kupp testified that corrosion only occurs if electronic equipment is not stored in an air conditioned room. Kupp claimed that the corrosion was not evident when he examined the equipment in 1988. Southern Message's expert, Henry Frieberger, saw evidence of water damage and corrosion when he inspected the equipment for the first time in 1990. Northern therefore contends that the majority of the damage occurred after Southern Message neglected to move the equipment to an air conditioned location.
The trial court stated that the testimony and evidence produced by Southern Message proved that there had been water damage as a result of the rain. The award represented the damage sustained because of McWater's failure to cover the roof properly. After reviewing the record, we cannot say that the trial court was clearly wrong in its findings.
Attorney's Fees and Penalties
The trial court has much discretion in assessing an award for attorney's fees. Haynes v. Shumake, 582 So.2d 959 (La.App. 2d Cir.1991). Southern Message contends that the award of $5,000 is inadequate to cover legal expenses incurred and should be increased to a sum commensurate with the claim.
Counsel for Southern Message introduced into evidence an affidavit detailing his time spent on the case. He expended 80.30 hours prior to trial. The trial lasted for four days. The court based its award on these factors. Given the trial court's discretion and because we find nothing unreasonable about the award of $5,000 in attorney's fees, we will not amend the court's ruling. Furthermore, because we have not increased the damage award, the penalty award also remains unchanged.

Conclusion
For the reasons expressed, the judgment is affirmed. Costs of appeal are assessed one half to Southern Message and one half to appellees, Northern and McWaters.
NOTES
[1] McWaters, Commercial Union Insurance Company and Northern Assurance Company of America are collectively referred to as "Northern."
[2] Counsel for Southern Message urged that we consider a four-part test articulated in Adams v. Chevron U.S.A., Inc., 589 So.2d 1219 (La.App. 4th Cir.1991), writ denied, 592 So.2d 415 (La. 1992). However, in a footnote to Clement v. Griffin, 91-1664, 92-1001, 93-0591 to 0597, 93-0648 (La. 03/03/94), 634 So.2d 412, the Fourth Circuit declared that the Louisiana Supreme Court's adoption of the new standard effectively overrules Adams as it pertains to expert witnesses. The Adams test had been derived from the United States Fifth Circuit Court of Appeals case, Christophersen v. Allied-Signal Corp., 939 F.2d 1106 (5th Cir.1991).