# STATE OF LOUISIANA

## COURT OF APPEAL, THIRD CIRCUIT

### 05-1283

JAMES W. TOWNSEND, ET AL.

VERSUS

TRUSTEES OF LOUISIANA COLLEGE, ET AL.

**********

APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, NO. 219,569-E
HONORABLE B. DEXTER RYLAND, DISTRICT JUDGE

**********

JAMES T. GENOVESE
JUDGE

**********

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Sylvia R. Cooks, and
James T. Genovese, Judges.

AFFIRMED.

COOKS, J., concurs and assigns reasons.


James A. Bolen, Jr.
709 Versailles Boulevard
Post Office Box 11590
Alexandria, Louisiana 71315-1590
(318) 445-8236
COUNSEL FOR PLAINTIFFS/APPELLANTS:
    James W. Townsend, Et Al.

Bradley L. Drell
Michael J. O'Shee
2001 MacArthur Drive
Post Office Box 6118
Alexandria, Louisiana 71307-6118
(318) 445-6471
COUNSEL FOR DEFENDANTS/APPELLEES:
    Trustees of Louisiana College, Et Al.

**GENOVESE, Judge.**

In this case, Plaintiffs, alumni and financial supporters of Louisiana College, appeal the district court's judgment denying their petition for a writ of mandamus seeking to invalidate the selection of the current president of Louisiana College. For the following reasons, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

On March 15, 2004, Dr. Rory Lee resigned as President of Louisiana College in Pineville, Rapides Parish, Louisiana. After Dr. Lee's resignation, the Board of Trustees (Trustees) of Louisiana College empaneled a nine-member Presidential Search Committee (PSC) pursuant to Article III, Section 5, of the college's bylaws.

In the months that followed, the PSC advertised for the position nationally and reviewed the résumés received from individuals interested in the position. After narrowing the field of prospects, the PSC issued a questionnaire and conducted a telephone interview with the top six most qualified candidates. Following the completion of the telephone interviews in August of 2004, the PSC chose Dr. Malcolm Yarnell (Yarnell), Dr. Stan Norman (Norman), and Dr. David Whitlock, as its top three most qualified candidates. After conducting personal interviews with each of these three candidates, the PSC selected Yarnell as its number one candidate, and Norman as its number two candidate.

The PSC presented its nomination of Yarnell for President of Louisiana College to a full meeting of the Board of Trustees on September 14, 2004. At a special meeting on September 24, 2004, Yarnell was offered the position of President of Louisiana College by the Trustees. The minutes of this special meeting also reflect that a minority report presented by Trustee Mary Moffett was offered in support of

1

Dr. Joe Aguillard (Aguillard) for the position. Yarnell indicated that he would consider the Trustees' offer; however, before the terms of a written contract could be finalized, and despite his interim involvement with the college, Yarnell withdrew his name from consideration on November 23, 2004.

At the Trustees' meeting on December 14, 2004, six additional members were appointed by the Trustees to the original nine-member PSC, creating a committee of fifteen people. At the same meeting, Trustee Alan Shoumaker moved to nominate Aguillard for the position of President of Louisiana College, with said nomination being seconded by Ms. Mary Moffett. On January 13, 2005, several individual alumni and financial supporters of Louisiana College, James W. Townsend, Ruth R. Townsend, Johnnye Jo Lott, Stanley Lott, Ida C. Sampson, Donald E. Sampson, Jean L. Lively, Carlton L. Winbery, Sarah W. Aycock, and Sellers Aycock (Plaintiffs) filed a petition for writ of mandamus pursuant to La.Code Civ.P. art. 3861, *et seq.*[1], requesting that the Trustees be ordered to fill the position of President of Louisiana College from a candidate nominated by the original nine-member PSC. Plaintiffs asserted that as alumni and financial supporters of Louisiana College they have an actual interest in whether the Trustees carry out their duties in accordance with the college's bylaws.

At the Trustees' meeting on January 17, 2005, Trustee Reverend William Smith nominated Aguillard, and Trustee Reverend Rick Aultman nominated Dr. John Traylor (Traylor), for the office of President. With thirty Trustees voting, seventeen

---

[1]Louisiana Code of Civil Procedure Article 3861 defines mandamus as "a writ directing a public officer or a corporation or an officer thereof to perform any of the duties set forth in Articles 3863 and 3864."

Louisiana Code of Civil Procedure Article 3864 provides, in pertinent part, that "[a] writ of mandamus may be directed to a corporation or an officer thereof to compel . . . [t]he holding of an election or the performance of other duties required by the corporate charter or bylaws."

votes were cast for Aguillard and thirteen votes were cast for Traylor.

The Trustees responded to Plaintiffs' mandamus action by filing a declinatory exception of lack of subject matter jurisdiction, a dilatory exception of lack of procedural capacity, and a peremptory exception of no right of action, or no interest in the Plaintiffs to institute the suit.

Following a trial on the exceptions and on the merits on February 25, 2005, and following oral arguments on March 17, 2005, the trial court rejected Plaintiffs' demands for issuance of the writ and overruled the Trustees exceptions of no right of action and lack of subject matter jurisdiction. Judgment was signed on April 5, 2005, dismissing Plaintiffs' demands, with prejudice, and assessing Plaintiffs with court costs.

On May 9, 2005, a hearing was held to decide the Trustees' motion to assess experts witness fees as costs of court regarding the testimony of court-accepted expert, C. Alan Jennings (Jennings), for his testimony regarding *Robert's Rules of Order*. Judgment was signed on May 31, 2005, awarding $500.00 to Jennings for his expert witness testimony fee and taxing said fee as a cost of court against Plaintiffs.

Plaintiffs perfected this appeal contesting the trial court's denial of their writ of mandamus and the assessment of Jennings' expert witness fees as costs of court taxed against them.

**ISSUES**

In their two assignments of error asserted on appeal, Plaintiffs argue that the trial court erred in (1) failing to issue the writ of mandamus ordering the Trustees to select the college's president from a nominee recommended by the original nine-member PSC, and in (2) relying upon the expert witness testimony of Jennings and

3

assessing his fee against Plaintiffs as costs of court.

## LAW AND DISCUSSION

### *Writ of Mandamus*

Mandamus is an extraordinary remedy which is used sparingly by the courts. *Bonvillian v. Dep't of Ins.*, 04-332 (La.App. 1 Cir. 2/16/05), 906 So.2d 596.

> Further, mandamus is to be used only when there is a clear and specific legal right to be enforced or a duty that ought to be performed. It never issues in doubtful cases. Although the granting of a writ of mandamus is considered improper when the act sought to be commanded contains any element of discretion, it has, nevertheless, been allowed in certain cases to correct an arbitrary and capricious abuse of discretion by public boards or officials.

*Id*. at 599 (citations omitted).

Plaintiffs contend that they have a cause and right of action to institute this mandamus proceeding against the Trustees of Louisiana College to compel the Trustees to fill the vacancy in the office of President with a nominee presented by the PSC.

> Article III, Section 5, of the bylaws of Louisiana College provides:
>
> In the event of a vacancy in the office of the President, the Executive Committee shall function as a Presidential Search Committee to submit nominations for candidates for that office. The search committee shall also include a faculty representative selected by the faculty and a student representative selected by the Student Government Association. Once constituted, the persons serving on the Presidential Search Committee shall serve as said committee until the position is filled. A vacancy in any of the offices of the College may be filled at any meeting of the Board of Trustees. The President of the College shall be an active member of a Southern Baptist Church.

The trial court ruled that the bylaws of Louisiana College did not contain language prohibiting the procedure implemented by the Trustees to elect Aguillard. The trial court, in rejecting Plaintiffs' mandamus demand, stated:

> Dr. Aguillard was not nominated by the search committee in

4

accordance with procedures set forth in the bylaws. However, he was nominated from the floor by a member of the Board of Trustees and elected by a majority vote of the Board of Trustees. The real question becomes whether a president of the college must be nominated by the search committee or if he may be nominated from the floor by a member - by a trustee.

We had testimony of Mr. C. Alan Jennings, an expert parliamentarian[,] who testified that in the absence of a prohibition in the bylaws[,] nominations from the floor were acceptable. A review of the bylaws finds no prohibition against a floor nomination. It seems clear that the nominating committee has only the power to nominate and not to elect. The power to elect is vested in the Board of Trustees. There is no indication that there was any problem with the notice for the election or the election itself.

Thus this Court finds that Dr. Joe Aguillard was properly elected president of Louisiana College on January 17, 2005.

Accordingly, the trial court refused to impose a requirement that was not stated in the bylaws.

In response to Plaintiffs' petition for writ of mandamus, the Trustees assert that not only do Louisiana College's bylaws grant the Trustees the power to elect a president of the college, but the bylaws also grant the Trustees the authority to fill a vacancy in any of the offices of Louisiana College at any meeting of the Trustees. This authority is specifically granted to the Trustees in the bylaws. To the contrary, there is no provision mandating that the vacancy in the office of President be filled with a nominee presented by the PSC. We agree.

The bylaws do not require a President to be elected only from nominees from the PSC, nor do the bylaws prohibit nominations by Trustees. The bylaws do specify that "[a] vacancy in any of the offices of the College may be filled at any meeting of the Board of Trustees." This provision confers upon the Trustees the requisite authority to fill the vacancy in the office of President at any meeting. Further, the function of the PSC is not to elect; it is to nominate. Contrary to the PSC's testimony that its nominee, and only its nominee, is eligible for election by the Trustees, a

5

nomination by the PSC is merely a recommendation to which the Trustees may or may not subscribe. The end result, i.e., filling a vacancy in the office of President for Louisiana College, is accomplished solely by vote of the Trustees at any meeting of the Board of Trustees as explicitly set forth in Article III, Section 5, of the bylaws of Louisiana College. Thus, we find no error in the trial court's judgment rejecting Plaintiffs' demands for issuance of the writ of mandamus. Having affirmed the trial court's judgment rejecting Plaintiffs' demands for issuance of the writ of mandamus, this court need not address the issue of standing, which was first raised on appeal, but has now been rendered moot.

### *Expert Witness*

Pursuant to La.R.S. 13:3666, expert witnesses are entitled to be compensated for their services in an amount to be determined by the court and taxed as costs to be paid by the party cast in judgment. The fixing of expert witness fees is largely within the sound discretion of the trial court and may not be reversed on appeal absent an abuse of discretion by the trial court. *Massie v. Deloach*, 04-1425, 04-1578 (La.App. 3 Cir. 3/2/05), 896 So.2d 1246, 896 So.2d 1252, *writ denied*, 05-786 (La. 5/6/05), 901 So.2d 1107.

Plaintiffs contend that the testimony of Jennings, a professional registered parliamentarian, was not needed and that it was error for the trial court to award Jennings an expert witness fee and tax said fee against Plaintiffs as a cost of court. Plaintiffs assert that Jennings' testimony was superfluous, unnecessary, and erroneous regarding *Robert's Rules of Order* and the propriety of the Trustees' actions. We disagree.

Louisiana Code of Evidence Article 702 provides, "[i]f scientific, technical, or

6

other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise."

"[Louisiana Code of Evidence Article] 702 states that experts may be qualified by reason of 'knowledge, skill, experience, training, or education.' Thus, formal education in the area of expertise is not required; 'experience alone is enough to qualify a witness as an expert.'" *Adams v. Chevron U.S.A., Inc.*, 589 So.2d 1219, 1224 (La.App. 4 Cir.1991), *writs denied*, 592 So.2d 414, 592 So.2d 415 (La.1992) (quoting *Aaron v. Bankers and Shippers Ins. Co. of New York*, 475 So.2d 379, 382 (La.App. 1 Cir.1985)).

Further, "[n]ote (d) to [La.Code Evid. art. 702] explains that '[b]road discretion should be accorded the trial judge in his determination as to whether expert testimony should be held admissible and who should or should not be permitted to testify as an expert.'" *Precht v. Case Corp.*, 99-1296, p.10 (La.App. 3 Cir. 2/16/00), 756 So.2d 488, 496, *writ denied*, 00-791 (La. 5/5/00), 761 So.2d 546.

The trial court recognized Jennings as an expert in the field of parliamentary procedure based upon his experience as a professional registered parliamentarian. Jennings' testimony was specifically cited by the trial court as being relied upon and beneficial. Having considered Jennings' presence at the meetings which forms the basis of this dispute, his testimony at trial, and his professional experience in the field of parliamentary procedure, the trial court did not abuse its vast discretion in accepting Jennings as an expert in the field of parliamentary procedure. Nor did the trial court abuse its discretion in awarding him an expert witness fee of $500.00 for

7

his services and in taxing said fee against Plaintiffs as a cost of court.

## DECREE

The judgment of the trial court is affirmed. We assess all costs of these proceedings to the Plaintiffs/Appellants.

**AFFIRMED.**

STATE OF LOUISIANA

COURT OF APPEAL, THIRD CIRCUIT

05-1283

JAMES W. TOWNSEND, ET AL.

VERSUS

TRUSTEES OF LOUISIANA COLLEGE, ET AL.

COOKS, J., concurs.

After carefully reviewing Louisiana College's bylaws, I am compelled to join in the majority's opinion. In Article II, § 2 of the United States Constitution it is provided the President of the United States "shall nominate, and by and with the advice *and consent* of the Senate, shall appoint ambassadors, other public ministers and consuls, judges of the Supreme Court, and all other officers of the United States . . ." (Emphasis added.) In that section, the Constitution specifically binds the President and Senate together in the process of *nominating and selecting* these "officers of the United States." In contrast, there is nothing in the Louisiana College bylaws which provide the PSC more than an advisory or nominating role in the selection process of the position of President of Louisiana College. The bylaws do not provide that the Board of Trustees must select a candidate nominated by the PSC; nor is there any provision in the bylaws to prohibit nominations by the Board of Trustees. Therefore, the PSC's argument that the president's position could only be filled from a candidate recommended by it was properly rejected.